UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                 :

DANIEL REECE,

                                                       :       10 Civ. 02901 (JSR) (DF)

                          Plaintiff,

                                                       :       **REPORT AND**

             -against-                                            **RECOMMENDATION**

                                                       :

MARC ECKO UNLTD., et al.,                         :

                                        Defendants.      :
-----------------------------------------------------------------------X

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

       In this copyright infringement action, *pro se* plaintiff Daniel Reece ("Reece") claims that his copyrighted artwork, as well as his persona, were used without his permission in a video game developed and/or sold by defendants.  Currently referred to this Court for a report and recommendation are defendants' motion to dismiss the Second Amended Complaint (Dkt. 20), and Reece's motion for leave to file a third amended complaint (Dkt. 27).

       For the following reasons, I recommend that defendants' motion to dismiss the Second Amended Complaint be granted, and that Reece's motion for leave to file a further amended pleading be denied.

## BACKGROUND

### A.    Factual Background

       Based on the factual allegations of his Second Amended Complaint, dated October 14, 2010 ("2d Am. Compl.") (Dkt. 9), which are accepted as true for purposes of defendants' motion to dismiss (*see infra,* at 10), Reece was, at one time, a well-known New York graffiti artist, whose artwork was characterized by a painted design of the name or word "Dip" (*see id.,* at

¶ III(C)(2-3)).[1]  Reece has obtained registered copyrights for certain of his visual designs, which may generally be characterized as stylized renderings of "Dip" and, in certain instances, of the variant "Dip-ism."  (*See id.,* at ¶ III(C)(5-a)[2]; Declaration of Jeremy S. Goldman, Esq., dated Jan. 20, 2011 ("Goldman Decl.") (Dkt. 26), at Ex. C (Reece copyrighted images numbered 1-21, with a certificate of authenticity from the Copyright Office); *see also id.,* at Ex. B (copy of the copyright catalog card for Reece's artwork).)

According to Reece, defendants have developed, and have been selling since at least 2006 (including through the Internet), a video game entitled "Getting Up – Contents Under Pressure" (the "Game").  (2d Am. Compl., at ¶ III(C)(4-b).)  In Reece's view, the Game "pay[s] homage to subway graffiti art, . . . in New York City in particular," and further "pay[s] tribute to the genre's [New York City] legends."  (*Id.,* at ¶ III(C)(2).)  The Game apparently has an action character named "Dip," includes a scene described as "Dip's Hideout," and prominently displays graffiti-style artwork featuring the name or word "Dip."  (*Id.,* at ¶ III(C)(2, 4-a); *see also* Declaration of Marc Fernandez, dated Jan. 20, 2011 ("Fernandez Decl.") (Dkt. 25), at Ex. A-L (copies of all of the "Dip" artwork contained in the "Dip's Hideout" scene in the Game, as well as copies of other graphic designs in the Game that feature the letters "Dip.").)  Based on the

---

[1] Although the parties' papers do not present it in exactly these terms, it is the Court's understanding that "Dip" was Reece's "tag" as a graffiti artist; in other words, that he used it as his personal identifying mark.  "Dip," of course, is also a word, which has both traditional and slang definitions.  *See, e.g.,* dictionary.com (defining "dip" as, *inter alia,* "to plunge (something, as a cloth or sponge) temporarily into a liquid, so as to moisten it, dye it, or cause it to take up some of the liquid:  He dipped the brush into the paint bucket."); *see also* urbandictionary.com (defining "dip" as, *inter alia,* "to leave abruptly").

[2] In an apparent numbering error, paragraph III(C) of the Second Amended Complaint lists subparagraphs 1-5, and then lists two additional subparagraphs, also numbered 4-5.  For ease of reference, the Court identifies the first paragraph numbered III(C)(4) as ¶ III(C)(4-a) and the second as ¶ II(C)(4-b), and uses the same approach for the paragraphs numbered III(C)(5).

exemplars defendants have produced in this action, the Game also displays artwork incorporating the words "dipism" and "dipster."  (*See* Fernandez Decl., at Exs. E-H.)

### B.     Procedural History

#### 1.     Reece's Pleadings

On December 31, 2009, Reece commenced this action by filing a Complaint, naming as defendants "Marc Ecko Unltd.; Marc Ecko Enterprises *et al.*; Foundation 9; Sony Corporation *et al.*; Atari, Inc.; Infogrames Entertainment *et al.*; Microsoft; and Sean 'Diddy' Combs Bad Boy Worldwide Entertainment *et al.*"  (*See* Complaint, dated Dec. 31, 2009 ("Compl.") (Dkt. 2).[3] Generally, Reece claimed that the named defendants had used his artwork and created a character in his likeness, without his knowledge or consent, and without compensating him.  (*Id.,* at 3.)  More specifically, Reece claimed that defendants' Game had a character, played by Sean "Diddy" Combs, that was based on Reece.  (*Id.*)  Reece also claimed that the Game unlawfully used his "Dip" artwork.  (*Id.*)

On April 5, 2010, the Court issued an Order, directing Reece to file an amended complaint to cure certain defects in his initial pleading.  (*See* Order, dated Apr. 5, 2010 (Dkt. 3).)  In particular, the Court noted the absence, in the Complaint, of any allegations that Reece owned registered copyrights in his artwork, and that defendants had infringed his copyrights by copying constituent elements of his works that were original.  (*See id.,* at 1 (finding that "Plaintiff's broad accusation that defendants have used his artwork without his knowledge or consent cannot

---

[3] Although the Docket shows a filing date for the Complaint of April 5, 2010, the complaint of a *pro se* plaintiff is considered filed as of the date it is received by the Court's *Pro Se* Office, and the face of Plaintiff's Complaint bears a stamp showing that it was received on December 31, 2009.

sustain this action under 17 U.S.C. § 501").)  The Court ordered Reece to file an amended complaint within 60 days.  (*Id.*)

On June 3, 2010, in compliance with the Court's Order, Reece filed an Amended Complaint.  (*See* Amended Complaint, dated June 3, 2010 ("Am. Compl.") (Dkt. 4).)  In his Amended Complaint, Reece asserted that his claims were brought pursuant to 17 U.S.C. 501, and he essentially alleged that the Game "developed, promoted, and sold" by defendants contained his copyrighted artwork and depicted him as the "artist Dip," without obtaining his permission or compensating him.  (*Id.* at ¶ III(C).)  Reece claimed that, unlike him, other artists from New York City were compensated for defendants' use of their artwork and for depictions of characters in their likeness.  (*Id.*)

Reece then filed a Second Amended Complaint on October 15, 2010.  (Second Amended Complaint, dated Oct. 14, 2010 ("2d Am. Compl.") (Dkt. 9).)  In this second amended pleading, Reece changed the names of some of the previously-named defendants and dropped Sean "Diddy" Combs as a defendant.  (*See id.* (naming as defendants: "Show &Prove LLC, d/b/a Marc Ecko Entertainment, Marc Ecko Unltd., Marc Ecko Enterprises, *et al.*, Atari, Infogrames Entertainment, SONY Computer Entertainment of America LLC, SONY, *et al.*, Microsoft, Foundation 9 Entertainment, a/k/a The Collective, *et al*." (collectively, "Defendants").))  Liberally construed, the Second Amended Complaint alleges that Reece holds a valid registered copyright in his "Dip" artwork,  and that, without authorization, Defendants have displayed, in their Game, artwork that is substantially similar to his registered designs.  (*Id.,* at ¶ III(C)(2-3).)  Reece seeks what he describes as "conservative" statutory damages of between $180 million and $900 million, either from each named defendant or from Defendants collectively, based on his

4

estimate of the number of units of the Game that have been distributed by Defendants, both domestically and internationally, since the Game's release.  (*Id.,* at ¶ V.)

### 2.   **Defendants' Motion To Dismiss**

On January 20, 2011, Defendants filed a motion to dismiss the Second Amended Complaint, pursuant to Rules 12(b)(2), 12(b)(6), and 21 of the Federal Rules of Civil Procedure. (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, dated Jan. 20, 2011 ("Defs. Mem.") (Dkt. 21).)  Defendants argue, in their motion, that (1) the artwork contained in the Game is not substantially similar to Reece's works as a matter of law; (2) Reece's works were not registered prior to the commencement of this action; (3) the Second Amended Complaint fails to state a claim for vicarious or contributory copyright infringement; (4) the Second Amended Complaint fails to allege a basis for personal jurisdiction over any foreign party; (5) Reece is barred from recovering statutory damages or attorneys' fees because he did not register any copyright prior to the publication of the allegedly infringing works; and (6) each defendant is improperly named.  (*See id.,* at 1-2.)

With their motion, Defendants have submitted copies of the 21 images that Reece has apparently deposited to the United States Copyright Office, and as to which he is claiming copyright ownership.  (*See* Goldman Decl., at Ex. C.)  In addition, Defendants have submitted a declaration from Marc Fernandez ("Fernandez"), a past Vice President of Creative Development for defendant SHOW & PROVE LLC ("SHOW & PROVE").  (Fernandez Decl., at ¶ 1-2.) Fernandez states that SHOW & PROVE produced and developed the Game, and that he was responsible for managing that development and for supervising the creation of the artwork that appears in the Game.  (Id., at ¶ 2)  Fernandez attaches to his Declaration "all of the 'Dip' artwork contained in the 'Dip's Hideout' scene in the Game," and copies of "every other graphic design

in the Game that, to the best of [Fernandez's] knowledge, features the letters 'Dip.'"  (*Id.,* at ¶¶ 3-4 and Exs. A-L.)  Thus, Defendants represent that they have placed before the Court all of Reece's copyrighted "Dip" artwork (the "Reece Art"), as well as all of the "Dip" artwork contained in the Game (the "Game Art").

In response to Defendants' motion to dismiss, Reece argues that there is substantial similarity between his copyrighted works and the Game Art.  He relies on the fact that his Amended Complaint passed the Court's screening review for "substantive sufficiency," and he generally argues that discovery would allow him to establish grounds for vicarious or contributory copyright infringement.  (*See generally* Affirmation in Opposition To Motion To Dismiss Second Amended Complaint, dated Mar. 7, 2011) ("Reece Opp.") (Dkt. 32).)  He defers to the Court on the issues of statutory damages or attorney fees and the proper naming of defendants.  (Reece Opp., at 3.)

### 3.      Reece's Motion for Leave To File a Third Amended Complaint

At the same time that Defendants moved to dismiss the Second Amended Complaint, Reece moved for leave to file a Third Amended Complaint (*see* Notice of Motion, dated Jan. 20, 2011 (Dkt. 27)), contending that "new facts [had] come to light," requiring him to join two new defendants – Iconix Brand Group Inc., and Amazon.com (*id.*).  In support of naming these new defendants, Reece alleges that, in 2009, Iconix Brand Group Inc. took over, or took control over, relevant parts of the Ecko companies previously named as defendants.  (*Id.*, at ¶ III(C)(10-12).) Reece further alleges that Amazon.com is liable for copyright infringement by virtue of its worldwide distribution of the Game.  (*Id.*, at ¶ III(C)(13).)

Apart from adding allegations about these proposed new defendants, Reece's proposed Third Amended Complaint is not materially different than his Second Amended Complaint,

although Reece's revised factual allegations are slightly more expansive.  Reece would now plead, for example, that Defendants' Game used his "artistic persona, name, substantially similar physical representation and artwork," that Defendants neither compensated him nor obtained his consent, that he was "known as a prodigy and intellectually gifted," and that Defendants, through research, would have been able to access his artwork and information about his persona, giving them the means to infringe on his protected rights.  (*See generally id.*, ¶ III(C).)  Reece concedes, in his proposed Third Amended Complaint, that, in using his "Dip" artwork, Defendants "attempt[ed] [to] chang[e] [the] writing styles," but he nonetheless asserts that "the concept and intellectual property [was] registered as [his.]"  (*Id.*)

Reece makes clear in his papers that, to the extent he raises any arguments in support of his motion to amend that would have bearing on Defendants' motion to dismiss, he wishes to have the Court consider all of his arguments, in both contexts.  Thus, in his opposition to the motion to dismiss, Reece explicitly cross-references his reply papers on his motion to amend.  (*See* Reece Opp., at 3.)  Accordingly, and in light of Reece's *pro se* status, this Court will consider his submissions in their entirety, in connection with both of the pending motions.

## DISCUSSION

## I.   DEFENDANTS' MOTION TO DISMISS

In moving to dismiss the Second Amended Complaint, Defendants principally challenge the adequacy of Reece's copyright claims.  Yet, as Defendants also raise a jurisdictional argument (as to one defendant), the Court will address that argument first.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (noting that jurisdiction is a threshold inquiry).  The Court will then proceed to consider Defendants' other arguments.

### A.   Personal Jurisdiction

When a defendant moves to dismiss a case for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)  When assessing whether personal jurisdiction is authorized, the court first looks to the long-arm statute of the forum state.  *Krepps v. Reiner*, No. 05 Civ. 0107 (RWS), 2005 LEXIS 15185, * 8 (S.D.N.Y. July 27, 2005).  If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise of jurisdiction comports with the requisites of due process.  *Id*.  The facts must be construed in a light most favorable to the plaintiff.  *Id.* at *7.

The court may utilize various procedures to rule on a Rule 12(b)(2) motion:.

> [It] may determine the motion on the basis of affidavits alone; it may grant discovery; it may conduct a preliminary hearing on the merits.  In the absence of a full-blown hearing on the merits, plaintiff need make only a prima facie showing that the court has jurisdiction under a long-arm statute.

*Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981) (internal citations omitted); *see also Krepps v. Reiner*, No. 05 Civ. 0107 (RWS), 2005 LEXIS

15185, at *15-16 (S.D.N.Y. July 27, 2005) (deferring judgment on Rule 12(b)(2) motion and granting *pro se* plaintiff 30 days to submit any factual material or to initiate any jurisdictional discovery).  A plaintiff may defeat a Rule 12(b)(2) motion to dismiss by making a *prima facie* showing, through affidavits and other evidence, that the defendant's conduct was sufficient for the court to exercise personal jurisdiction.  *Id.*

Here, Defendants argue that the Court lacks personal jurisdiction over defendant Infogrames Entertainment, S.A., which Defendants assert has been renamed "Atari, S.A.," and which, according to Defendants, is a French company.  (*See* Defs. Mem. at 19, 22.)  Although Defendants make no argument (and offer no evidence) that this defendant actually *lacks* contacts with this jurisdiction, they contend that Reece has failed to plead any such contacts, and that his pleading is deficient in this regard.  The Court takes note, however, of Reece's *pro se* status, and of the fact that he has not likely taken any jurisdictional discovery.  Such discovery, if it were to proceed, might yield information sufficient for Reece to carry his burden of demonstrating personal jurisdiction, and any jurisdictional insufficiency in his pleading might then be easily remedied.  Accordingly, I do not recommend that this case be dismissed against any defendant, at this juncture, for lack of personal jurisdiction.  *See Krepps*, 2005 LEXIS 15185 at * 15-16.  In any event, as discussed below, Defendants' motion to dismiss may be granted, as against all defendants, on other grounds, rendering the jurisdictional issue moot.

B.      **Adequacy of Reece's Copyright Claims**

Defendants argue that Reece's copyright claims cannot survive, as a matter of law, based on a comparison between the expressive qualities of the Reece Art and the Game Art. According to Defendants, the parties' artwork cannot be found to be sufficiently similar to support Reece's claims.

1.      **Applicable Legal Standards**

a.      **Rule 12(b)(6)**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when it is not "legally sufficient" to state a claim upon which relief may be granted. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991). In deciding a 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

Where, as here, a plaintiff is proceeding *pro se*, the Court must construe the pleadings liberally, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), and "interpret them to raise the strongest arguments that they suggest" *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* plaintiff's pleadings, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))).

Though the Court will construe a *pro se* plaintiff's pleadings liberally, the plaintiff is still required to comply with all "relevant rules of procedural substantive law." *Bisson v. Martin Luther King Jr. Health Clinic*, No. 07 Civ. 5416, 2008 U.S. App. LEXIS 23977, at *2 (2d Cir.

10

Nov. 20, 2008) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Any "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citing *Smith v. Local 819 I.B.T. Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss brought under Rule 12(b)(6), the Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, and any documents on which the plaintiff relied while drafting his pleading. *See Idelicato v. Suarez*, 207 F. Supp. 2d 216, 217 (S.D.N.Y. 2002) (citing *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) Thus, even where a document is not attached to a complaint or explicitly incorporated by reference, the Court may consider it on a motion directed to the face of the pleading, where the document has been relied upon by the plaintiff and is "integral" to the complaint. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).

Further, while the Court generally "may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss," *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 U.S. Dist. LEXIS 18131, at *2 n.2 (S.D.N.Y. Nov. 13, 1997), the requirement that a *pro se* plaintiff's allegations be construed liberally makes it appropriate for the Court to consider factual allegations made in

11

the plaintiff's opposition memorandum, as long as they are consistent with the complaint, *see Braxton v. Nichols*, No. 08 Civ. 08568 (PGG), 2010 U.S. Dist. LEXIS 25652, at *3 (S.D.N.Y. Mar. 18, 2010) (citing *Coakley v. 42nd PCT. Case 458*, No. 08 Civ. 6202 (JSR) (RLE), 2009 U.S. Dist. LEXIS 89437, at *7 (S.D.N.Y. Aug. 21, 2009) (Report & Recommendation), *adopted by*, 2009 U.S. Dist. LEXIS 89372 (S.D.N.Y. Sept. 29, 2009)); *see also Gill v. Mooney*, 824 F.2d 192, 194-95 (2d Cir. 1987).

### b.   17 U.S.C. § 501

To prevail on a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must demonstrate both ownership of a valid copyright and infringement. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 2001). In order to establish infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal quotations and citations omitted).

Actual copying may be proved directly or indirectly. Indirect evidence of copying includes proof that defendants had access to the copyrighted work and that probative similarities exist between the works. *See Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). Because direct proof of access is often impossible to adduce, *see* Nimmer on Copyright § 13.01[B], the law permits a plaintiff to prove access through evidence that an alleged infringer had a "reasonable possibility of access" to the original work, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54 (2d Cir. 2003). A finding of "probative similarity," for purposes of establishing copying (as opposed to a finding of "substantial similarity," for purposes of establishing

infringement), may inhere in protected or unprotected elements. *See* Nimmer on Copyright § 13.01[B].

Once the plaintiff has proved, either directly or indirectly, that the defendant has actually copied the plaintiff's work, the plaintiff must demonstrate that the defendant's work is "substantially similar to that which is original in the plaintiff's expression." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 129 (2d Cir. 2003). "The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design*, 262 F.3d at 111 (quoting *Hamil Am.*, 193 F.3d at 100). Application of the "ordinary observer test" involves asking "whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Peter F. Gaito Architecture*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

When analyzing works with both protectible and unprotectible elements, however, the analysis must be "more discerning," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994), and the Court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the *protectible elements, standing alone*, are substantially similar," *Knitwaves*, 71 F.3d at 1002 (emphasis in original). Yet this "more discerning" analysis does not mean that courts are required to "dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable," *Knitwaves,* 71 F.3d at 1003, as copyright protection may also be available for the original selection, coordination, and arrangement of a collection of elements, including elements that, standing alone, would be unprotectible, *see id.* at 1003-04 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

13

340, 358 (1991).  Indeed, "a work may be copyrightable even though it is entirely a compilation of unprotectible elements."  *Knitwaves,* 71 F.3d at 1003 (citing *Feist,* 499 U.S. at 362).  Thus, when faced with works containing both protectible and unprotectible elements, courts must "examine the works' 'total concept and feel.'"  *Id*.

"Essentially, the total-concept-and-feel locution functions as a reminder that, while the infringement analysis must *begin* by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation."  *Tufenkian*, 338 F.3d at 134.  The court must "analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking."  *Id.* at 134-35.

A district court may consider the question of non-infringement in a copyright action on a Rule 12(b)(6) motion to dismiss.  *See Peter F. Gaito Architecture*, 602 F.3d at 59.  "In copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them.'"  *Id.* at 64 (citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)).  "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'"  *Id.* at 64 (citing *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991).

> [I]t is entirely appropriate for the district court to consider the similarity between [the subject] works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation.  If, in making that evaluation, the district court determines that the two works are not

14

> substantially similar as a matter of law, the district court can
> properly conclude that the plaintiff's complaint, together with the
> works incorporated therein, do not plausibly give rise to an
> entitlement to relief.

*Id.* (internal citations and quotations omitted); *see also Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 305 (S.D.N.Y. 2005); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1, 632 (S.D.N.Y. 2008) (granting Rule 12(b)(6) motion to dismiss and holding that the two works in question, which the court deemed incorporated into the complaint by reference, were not substantially similar).

In this instance, seeking dismissal of Reece's copyright claims under Rule 12(b)(6), Defendants primarily argue that, regardless of whether Reece owns a valid copyright in his artwork, and regardless of whether Defendants may have copied that artwork, Defendants cannot be held liable for copyright infringement because, as a matter of law, the Reece Art and the Game Art are not "substantially similar."  (*See* Defs. Mem., at 8 – 13.)  Even though neither Reece's nor Defendants' artwork is attached to the Second Amended Complaint, it is appropriate for the Court to review and compare the parties' designs in the context of Defendants' Rule 12(b)(6) motion, as the issue of these designs' similarity is integral to Reece's pleading. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### 2.     Elements of the Reece Art and the Game Art

The Court observes the following elements or "component parts" of the Reece Art and the Game Art[4]:  (1) the use of the name or word "Dip" or "Dipism;" (2) the use of certain styles of graffiti lettering; (3) the use of certain color schemes; (4) the use of geometric shapes, such as

---

[4]  Ascertaining the "component parts" of the work is a case-specific inquiry that begins by considering what is distinctive about a given design.  *Tufenkian*, 338 F.3d at 135 n.8.

circles, squares, or stars, to ornament the "i" in "Dip" or otherwise to ornament the lettering; and (5) the use of certain backgrounds to the word "Dip" or "Dipism."  The Court considers, in turn, which of these elements, standing alone, are protectible

### a.    Use of the Name or Word "Dip" or "Dipism"

Neither "Dip" nor "Dipism" is itself protected by copyright law.  *See* 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are not subject to copyright); *Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.,* 63 F. Supp. 2d 329, 340 (S.D.N.Y. 1999) (noting that "the name 'Priya' itself cannot be copyrighted" (citing *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir. 1959)); *see also, e.g., Orange County Choppers, Inc. v. Oleas Enterprises, Inc.,* 497 F. Supp. 2d 541, 553 (S.D.N.Y. 2007) (considering ramification of "removal from a registered work of non-copyrightable elements, such as the words 'OCC' and 'Orange County'"); *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1036 (N.D. Cal. 1992) (holding that a short phrase or name "is merely an unprotectible aspect of a visual work"); *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1219-20 (D. Colo. 1999) (ruling that holder of copyright on comic strip "Chipper," as a whole, did not have copyright interest in name "Chipper," and also that defendant's use of "Chick'n Chippers," did not infringe phrase "Chicken Chipper" used in copyrighted comic strip because words and phrases standing alone were not entitled to copyright protection).  As names and words are not themselves subject to copyright protection, the mere use by Defendants of the word "Dip" cannot, even if copied from Reece's artwork, constitute copyright infringement.

Reece argues that adding the suffix "-ism" to the word "Dip," uniquely distinguishes his artwork.  (*See* Reece Opp., at 2 ("The importance of the added ISM to the artist is that it accentuates the artistic expression as one of totality and singularity, capable of only being

16

attributed, and recognized, (amongst fellow artists of the genre as well) as being solely

attributed, to that particular individual artist adding it to their visually artistic work painting,

drawings, and or writings.").)  Reece, however, misconstrues the law in this regard, as "Dipism"

is as much an unprotectible word (even if it is not a word found in the dictionary) as "Dip."

Nonetheless, although the words "Dip" and "Dipism" are not themselves subject to

copyright protection, the original manner in which Reece *expressed* these words is protectible.

*See* 17 U.S.C. § 102(b) (copyright protects expression); *see also Boisson v. Banian, LTD, et al.*,

273 F.3d 262, 268 (2d Cir. 2001) (holding that, "simply because a work is copyrighted does not

mean every element of that work is protected," and noting that copyright protection extends "to a

particular expression of an idea, and not to the idea itself").  Accordingly, the Court must

examine how the Reece Art "expresses" the idea of "Dip" and "Dipism," even though these

words themselves are not protected by Reece's copyrights.

### b. Use of Certain Graffiti Lettering

Turning to the use of certain fonts or lettering styles, the pertinent regulations make clear

that "mere variations of typographic ornamentation, lettering and coloring" are also not protected

by copyright.  37 C.F.R. § 202.1(a)(2000).  In *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F.

Supp. 706 (S.D.N.Y. 1987), the Court compared a movie poster and a poster comprised of a

cover from *The New Yorker* magazine.  *Id.* at 708-09.  The Court noted similarities in the

lettering contained in both posters, observing that "[t]he lettering on the drawing is spiky, in

block-printed handwritten capital letters substantially identical to [the lettering on *The New

Yorker* magazine's cover]," and that "the printed texts at the top and bottom of the poster are in

the typeface commonly associated with The New Yorker magazine."  *Id.* at 710-711.  Although

the similarities highlighted by the Court "reinforce[d] the impression that defendants copied

17

plaintiff's illustration," the Court accepted that the typeface, standing alone, was "not a subject of copyright." *Id.* at 711, n.2.

In this case, though, which deals with graffiti art, the form of the lettering at issue is arguably central to the artistic expression of particular words. In this unusual context, aspects of the lettering shown in the Reece Art, such as the degree of abstraction of the letters, the connectivity of the letters, the relative size of the letters, and the two- or three-dimensional appearance of the letters, may reveal the artist's personal style and strongly influence the "total concept and feel" of the subject works. *Cf. Boisson v. Banian Ltd.*, 273 F.3d 262, 271 (2d Cir. 2001) (in considering a copyright claim involving an "alphabet quilt," commenting that "we hesitate to say that letter shapes are unprotectible in this context," although the court did not need to reach this issue). Thus, although, as a general rule, "mere variations" of lettering styles are not protectible, the Court will consider the personalized, artistic variations of lettering inherent in the Reece Art, in considering whether the Game Art appears to be substantially similar.

### c.   Use of Certain Color Schemes

As to Reece's use of certain color schemes, "[c]olor by itself is not subject to copyright protection," *Boisson*, 273 F.3d at 271; *see also* 37 C.F.R. § 202.1(a), but "[a]n original combination or arrangement of colors should be regarded as an artistic creation capable of copyright protection," Nimmer on Copyright § 2.14. Furthermore, "even though a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted." *Boisson*, 273 F.3d at 271; *see also Feist*, 499 U.S. at 348 ("[C]hoices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such

18

compilations through the copyright laws.").  Accordingly, the color combinations and arrangements of the Reece Art may constitute protectible elements of that artwork.

### d.        Use of Geometric Shapes as Ornamentation

Some of the Reece Art, as well as the Game Art, uses circles, squares, or stars to ornament the "i" in the words "Dip" and "Dipism," or otherwise to decorate the designs.  No copyright protection is afforded to "familiar symbols or designs" or, as noted above, to "mere variations of . . . lettering."  37 C.F.R. § 202.1(a)(2000); *see also Jon Woods Fashions, Inc. v. Curran*, No. 85 Civ. 3203 (MJL), 1988 WL 38585 (S.D.N.Y. April 19, 1988) (affirming that "a simple combination of two or three standard symbols such as a circle, a star, and a triangle with minor linear variations" is not a proper subject for copyright protection) (citing I Compendium of Copyright Office Practices, § 2.8.3.I.a at 2-288, 289 (1973)).)  Nonetheless, this Court will review these elements when analyzing the "overall concept and feel" of the art at issue.  *See Knitwaves,* 71 F.3d at 1003 ( "[A] work may be copyrightable even though it is entirely a compilation of unprotectible elements.").

### e.        Use of Certain Backgrounds for the Word "Dip" or "Dipism"

Most of the Reece Art and the Game Art contain the name or word "Dip" or "Dipism" against a background of color and/or images.  As discussed above, "even though a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted."  *Boisson*, 273 F.3d at 271.  In addition, depending on the degree of their originality, the background images used by an artist in conjunction with a featured design may represent protectible elements of the larger work.

### 3.    Comparison of the Reece Art and the Game Art

Although the elements of certain pieces of the Reece Art that are arguably shared by certain of the Game Art are not all protected by copyright, the Court must examine whether the look and feel of the works is the same. *See Boisson*, 273 F.3d at 273 ("[W]hile use of the alphabet may not provide a basis for infringement, we must compare defendants' quilts and plaintiffs' quilts on the basis of the arrangement and shapes of the letters, the colors chosen to represent the letters and other parts of the quilts, the quilting patterns, the particular icons chosen and their placement."). The Court begins by comparing elements of two works that Reece himself specifically highlighted as sharing substantial similarities. Beyond that, the Court will make its own comparison of the other works that appear most similar.

### a.    Comparison of Images Identified by Reece as Being Substantially Similar

In his opposition to the motion to dismiss, Reece has particularly identified a piece of his artwork (Goldman Decl, Ex. C (image no. 3)), and argued that one of the Game Art pieces (Fernandez Decl., Ex. L) is substantially similar. (*See* Reece Opposition at 1-2.) These two works both focus on the name or word "Dip," although the colors, lettering styles, and overall presentations have notable differences.

First, Reece's depiction of "Dip" is in block letters that appear (from the copy presented) to have been painted in blue or purple, whereas the Game work in question presents the word in block letters that are bright red, with what appears to be a dark blue "shadow" outline around each letter. The letters in the Reece work, which have no outlining and appear to blend together, appear flat, or two-dimensional, whereas the outlining of the letters in the Game work make those letters appear sharper, more individually distinct, and somewhat three-dimensional.

Second, the shapes of the letters are significantly different in each work.  In the Reece

work, for example, the capital letter "D" is symmetrical and rounded, with the vertical part of the

letter reduced to a separate, stylized square, whereas, in the Game work, the capital "D" is all

one piece, and is angular and collapsed, with the bottom portion of the letter much wider than the

top portion.  The lower-case "i" in the Reece work is rectangular and "dotted" with a circle,

whereas the "i" in the Game work, while also lower-case, is curved and "dotted" with a

rectangle.  Lastly, the "P" in the Reece work is a capital letter that is wide and curved, whereas

the "P" in the Game work, while also a capital letter, is more narrow and angled.

Third, in the Reece work, the word "Dip" is shown at the left side of the total work, and it

is followed by a stylized ellipsis (comprised of three blue or purple squares) that then fill the rest

of the image.  In contrast, in the Game work, the word "Dip" is shown close to the center of the

piece, and is followed only by a stylized, rectangular period.  The wider positioning of the three

letters in the Reece work, in combination with the spread-out ellipsis, gives the presentation of

the Reece work a horizontal flow and feel.  In contrast, the overall design of the word "Dip" in

the Game work presents a more compressed form that, centered on the background, almost

resembles a circle.

Finally, the background of the Reece work, while difficult to discern in the copy provided

to the Court, appears to be slightly shaded, around the letters, with a pale blue or purple mist, in

a lighter hue of the same color used for the letters.  In the Game work, the background to the

letters is a pale blue that appears to look more like bubbles, or like a cloud made up of individual

paint splatters, and is in contrast to the bold red of the letters.

Viewed in their entirety, this Court finds, as a matter of law, that these two works are not

"substantially similar."  The lettering styles of the two works are different; the color schemes are

different; the use and placement of geometric shapes is different; and the backgrounds of the works are different.  Indeed, the only similarities between the two works is that they are both forms of graffiti art, and they both feature the word "Dip."  This Court has looked at the manner in which Reece has "selected, coordinated, and arranged" the elements of his work, and the manner in which the artist who created the Game work "selected, coordinated, and arranged" the elements of that artwork, and determines that both the individually protectible elements of the works, as well as the "total concept and overall feel" of the works, are substantially different.

**b.**      **Comparison of Other Images**

Despite Reece's highlighting of the above two works of art, it is the Court's view that the Game work discussed above (Fernandez Decl., Ex. L) is actually more similar to a different piece of the Reece Art (Goldman Decl., Ex. C (image no. 4)) than to the piece compared above (*id*. (image no. 3)).  Like the Game work, this second piece of Reece's artwork shows the word "Dip" in large, block-printed red letters, although it is difficult to tell, from the submitted copy, whether the red is as bright as the color used in the Game work.  In addition, as in the Game work, the individual letters in this piece of Reece artwork are outlined in a dark color, although, based on the submitted copy, the outlining color appears to be black, rather than dark blue.  The outlining does make the letters in both pieces of work stand out, and the letters are similarly drawn as overlapping.  In addition, like in the Game work, the word "Dip" in this piece of Reece artwork is roughly centered, and the letters of the word are fairly compressed.

Nonetheless, there are plainly ways in which these two works are again dissimilar.  The letters shown in this Reece work are shaped much like the letters in the Reece work previously described, and hence are notably different in shape from those of the Game work.  In addition, while the letters in this particular Reece work are outlined, the outlining does not have the same

"shadow," or three-dimensional, effect as the outlining in the Game work.  Further, the "dot" over the letter "i" in this Reece work is shown as a star, a feature not seen in the Game work. Finally, the backgrounds of the two pieces are different.  In this piece of Reece artwork, the word "Dip" appears to be framed by rays, with each ray consisting of a line of pale gray dots.  This Reece work also contains additional words, written below the large image of "Dip" – those words include small versions of the word "Dip," in solid black, accompanied by the words, in printed handwriting, "Writer's Ltd." and "Dream Its Possible!"  The Game work, in contrast, contains no writing beyond the single, large word "Dip."

Taken as a whole, this Court again concludes that, while these pieces are more alike than those the Court initially compared, an ordinary observer would still not regard the "aesthetic appeal" to be the same.  Thus, even as to these two pieces of artwork, which this Court considers the most similar of any of the opposing parties' designs, Reece would not be able to prevail on his claim of copyright infringement, as a matter of law.

This Court has also considered the remainder of the "Dip" artwork placed before it, and, while it notes that certain features, of certain of the parties' works, bear additional similarities, none of those features are sufficiently original or distinctive, when seen in the context of the works as a whole, to render the works substantially similar.  For example, while one piece of the Reece Art (Goldman Decl., Ex. C (image no. 1)), like one piece of the Game Art (Fernandez Decl., Ex. I), has a shape resembling an arrow projecting from the top of the capital letter "P" in "DiP," the overall impressions given by the two images are markedly different; there is little else about their styles that is at all the same.

Finally, this Court has compared the "Dip-ism" or "Dipism" images presented in the Reece Art and the Game Art.  (*See* Goldman Decl., Ex. C (images nos. 9, 20); Fernandez Decl.,

Exs. E, F.)  The word "Dip-ism" may be more unusual than the word "Dip," but, as discussed above, that alone cannot render Reece's images protectible.  (*See supra,* at 16-17.)  Upon review of the images, this Court finds that the *expression* of the word "Dip-ism" in the Reece Art bears virtually no resemblance to the *expression* of that word in the Game Art.

In the Court's view, the most similar of these images would be those contained in the Goldman Decl., at Ex. C (image no. 20) and the Fernandez Declaration, at Ex. E, as both show the word "Dip-ism" or "Dipism" in a type of balloon lettering; both, in some manner, employ the colors red, white, blue, and black; and both images are adorned, to some extent, with stars.  The Reece work, however, also prominently features the separate word "Dip," while the Game work does not.  The word "Dip-ism" is spelled in the Reece work with a hypen, whereas, in the Game work, there is no hyphen.  Moreover, the use of color in the two images is totally different.  The Reece work features black letters, outlined by a red-white-and-blue line against a black background; the lines, while thin, reveal patterns of color – in fact, the work looks like "scratch art," where lines are made by scratching off a black veneer, to reveal a pattern of colors underneath.  In contrast, the Game work features white letters, outlined in solid red, against a blue cloud of bubbles, surrounded by a few black stars, and set, ultimately, on a white background.  The Reece work also uses circles to dot the lower-case "i" in both "Dip" and "-ism," while the Game work uses hearts.  Those hearts, together with the Game work's use of a lower-case "d" (in "dipism") and curved flourishes at both the top of the "d" and bottom of the "p," render the overall effect of the Game work more whimsical.

At bottom, given the significant differences between the Reece Art and Game Art – even between the pieces with the greatest number of features in common – Reece cannot prevail on his copyright claims, and I therefore recommend that those claims be dismissed.[5]

### C.   <u>Adequacy of Reece's Privacy Claim</u>

In addition to alleging infringement of the copyrights in his artwork, Reece asserts in the Second Amended Complaint that Defendants "hire[d] someone to portray [him] as an action character" in the Game.  (2d Am. Compl., at ¶ 111(C)(2).)  The Court liberally construes this as an allegation that Defendants used Reece's likeness or persona in the Game, without Reece's permission, thereby violating his privacy rights.  More specifically, reading Reece's allegations to raise the strongest claim they suggest, the Court construes this as a claim that Defendants violated Reece's rights under New York's privacy law, Section 51 of the New York Civil Rights Law.  Under this statute, "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained . . . may maintain an equitable action . . . and may also sue and recover damages for any injuries sustained by reason of such use."  N.Y. Civ. Rights Law § 51 (McKinney 2011); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 358 (E.D.N.Y. 2009).

---

[5] In addition to challenging Reece's copyright claims for lack of "substantial similarity" between the works in question, Defendants also challenge those claims on other grounds, including Reece's failure to register his copyrights prior to commencing this action.  (*See* Defs. Mem., at 14.)  Although the Court need not reach Defendants' additional arguments, it does note that, while Reece's apparent belated registration could preclude him from obtaining statutory damages and attorneys' fees from Defendants, *see Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007), the mere fact that Reece may have obtained his registered copyrights after the litigation commenced would not, in itself, prevent him from maintaining this suit, *see Greenwich Film Prods. S.A. v. DRG Records, Inc.*, No. 91 Civ. 0546 (JSM), 1992 U.S. Dist. LEXIS 14770, *11-12 (S.D.N.Y. Sept. 18, 1992) (noting that "courts have routinely allowed late registrations" in copyright infringement cases) (citing cases).

Reece's privacy claim must fail, however, because, under the New York law, claims for violation of the right of privacy must be commenced within one year of the publishing event giving rise to the claim.  *See* N.Y. C.P.L.R. § 215(2); *Nussenzweig v. DiCorcia,* 9 N.Y.3d 184, 188 (2007).  According to Reece, the Game was first introduced for sale in February 2006 – well over a year before December 31, 2009, when Reece filed his initial Complaint.  (*See* Compl.; *see also* 2d Am. Compl., at ¶ III(C)(4-b).)

### D.  Potential Claim Under the Visual Artists Rights Act

Although not pleaded in the Second Amended Complaint, Reece's opposition to Defendants' motion to dismiss alleges that Defendants also violated the Visual Artists Rights Act, 17 U.S.C. § 106A ("VARA").  (*See* Reece Opp., at 1-2).  As noted above, the pleadings of a *pro se* plaintiff may be liberally read to encompass allegations made in opposition papers on a motion to dismiss.  (*See supra,* at 11-12.)  Reece, however, cannot be successful on a VARA claim, based on the terms of that statute.

In relevant part, VARA states that "the author of a work of visual art shall have the right to claim authorship of that work."  17 U.S.C. § 106A(a)(1)(A).  Thus, in order to be able to claim "authorship" of the Game Art under VARA, Reece would have to able to establish, as a threshold matter, that he is, in fact, the "author" of that art.  Given the ways in which the Game Art is dissimilar to the Reece Art, Reece cannot show that he actually "authored" the Game Art, and, for this reason alone, his purported VARA claim must fail.  *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F.Supp.2d 535, 554 (S.D.N.Y. 2003) (holding that dragon designs on certain pants were not "substantially similar," causing plaintiff's Copyright Act and VARA claims to fail "for the same reason," and additionally noting that VARA is only available to "author[s] of a work of visual art").

26

Moreover, VARA only protects original works of visual art, not copies.  17 U.S.C.S. § 101.

> [A] "work of visual art" can consist only of the artist's original "painting" and limited edition supervised copies, all other representations of the same image being definitionally ineligible. This distinction imparts an almost antipodal contrast between copyright and artists' rights.  The former, being concerned with conceptual types, attaches widely and can thus be characterized as volatile – an artist's copyright can be violated in a city with which she has no contact through such evanescent means as a radio broadcast, performance of a play, or display on a cathode ray tube. By contrast, artists' rights, being rooted to concrete objects, are forever fixed to limited points of attachment, and thus can be characterized as tactile – an artist's rights [under VARA] can be violated in a city only when her protected artwork is physically transported there, and the violation occurs always in propinquity to the protected object.

Nimmer on Copyright § 8D.06[A][2].  Reece does not claim – nor could he, given that the Game is a *video* game – that Defendants have displayed his original works of graffiti, without giving him credit.

Finally, "audiovisual work[s]" are explicitly excepted from the coverage of the statute. *See* 17 U.S.C.S. § 101 ("A work of visual art does not include . . . audiovisual work").  As explained in the statute's legislative history:

> a newspaper, book, or magazine may include a photograph of a painting or a piece of sculpture.  A motion picture may include a scene in an art gallery.  The exclusion from the definition of a work of visual art would be of little or no value if these industries could be held liable under section 106A for the manner in which they depict, portray, reproduce, or otherwise make use of such a work.  Moreover, because such actions do not affect the single or limited edition copy, imposing liability in these situations would not further the paramount goal of the legislation: to preserve and protect certain categories of original works of art.

H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 17-18 (1990).

Accordingly, I recommend that all of Reece's claims be dismissed.  Based on his own factual allegations, any privacy claim that Reece may be seeking to assert under New York law would be time-barred, and both his copyright claims and any potential VARA claim are without merit.

## II.    REECE'S MOTION FOR LEAVE TO  FILE A THIRD AMENDED COMPLAINT

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of complaints and provides that leave to amend a pleading "shall be freely given when justice so requires."[6] Fed. R. Civ. P. 15(a).  A "motion to amend should be denied if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'"  *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss, either for failure to state a cause of action, or on another ground.  *See*

---

[6] Although Rule 21 governs the addition of new defendants, in deciding whether to allow joinder under that Rule, the Court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980) (internal quotation and citation omitted); *see Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.") (internal quotation and citation omitted), *aff'd*, 199 F.3d 1321 (2d Cir.1999); *Sheldon v. PHH Corp.*, No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997) ("While plaintiffs' motion [to add a new defendant] properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction. . . . To the extent the limited case law under Rule 21 permits a conclusion, the standard under that rule is the same as under Rule 15."), *aff'd*, 135 F.3d 848 (2d Cir. 1998).

*Milanese v. Rust-oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).  Thus, if a proposed

amendment would be subject to "immediate dismissal" on some ground, the Court will not

permit the amendment.  *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55

(2d Cir. 1999).  If, however, the party seeking to amend "has at least colorable grounds for relief,

justice . . . require[s]" that its motion be granted.  *Ryder Energy Distrib. Corp. v. Merrill Lynch*

*Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).  As noted above, a *pro se*

litigant, in particular, should be afforded a reasonable opportunity to amend his complaint to

demonstrate the existence of a valid claim.  *See, e.g., Satchell v. Dilworth*, 745 F.2d 781, 785 (2d

Cir. 1984).  A court considers, however, the opportunities already afforded to a plaintiff to

amend the complaint.  3 Moore's Federal Practice § 15.15[1] (3d ed. 2011)

    In this case, Reece has already amended his Complaint twice, and he now seeks leave to

file a third amended complaint, in order to name additional defendants on the same claims that

he has asserted against others.  As these claims cannot survive for the reasons discussed above,

and as it does not appear that any substantive amendment could cure the defects in his claims,

Reece's proposed amendment would be futile.  I therefore recommend that the motion to amend

be denied.

**<u>CONCLUSION</u>**

    For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss

the Second Amended Complaint (Dkt. 20) be granted, that Reece's motion for leave to file a

third amended complaint (Dkt. 27) be denied, and that this matter be closed on the Docket of the

Court.

    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

29

objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         August 19, 2011

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Jed. S. Rakoff, U.S.D.J.

Mr. Daniel Reece
700 Lenox Avenue
Apt. 24H
New York, New York 10039

Jessie F. Beeber, Esq.
Frankfurt Kurnit Klein & Selz PC
488 Madison Avenue
New York, New York 10022